Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 CR 466 | DATE | 7/22/2003 |
| CASE TITLE | U.S.A. vs. Della Rose | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Judgment of Acquittal and Motion for New Trial

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Defendant's Motion for a Judgment of Acquittal [No. ] and Defendant's Motion for a New Trial [No. ] are both denied in part. The parties are ordered to file additional briefing on the issues highlighted in the opinion relating to the underlying false identification charge to the conspiracy count within fourteen days, with any response briefs due seven days after the initial brief. The additional briefs are limited to ten pages, and the responses are limited to five pages.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 22 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 104 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | jar/lc | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 02 CR 466-1 |
| Plaintiff, ) | |
| ) | HONORABLE DAVID H. COAR |
| v. ) | |
| ) | |
| STEVEN J. DELLA ROSE ) | |
| ) | |
| Defendant. ) | |

DOCKETED
JUL 2 2 2003

## MEMORANDUM OPINION AND ORDER

Following a jury trial, Defendant Steven J. Della Rose ("Defendant" or "Della Rose") was convicted of mail fraud in violation of 18 U.S.C. § 1341 and conspiracy to produce false identification in violation of the False Identification Crime Control Act, 18 U.S.C. § 1028, and in violation of the conspiracy statute, 18 U.S.C. § 371. On May 1, 2003, Defendant filed two motions: a motion for a judgment of acquittal and a motion for a new trial. For the reasons set forth in this opinion, both motions are denied in part.

## FACTUAL BACKGROUND

Defendant Della Rose, an attorney licensed to practice law in Illinois, was charged with conspiring to defraud one of his clients, James George, out of settlement proceeds in a worker's compensation case. Della Rose or someone acting for him forged George's signature on the settlement documents, prompting the employer to send Della Rose the settlement check via U.S. mail. Della Rose received a settlement check from George's employer, of which George was entitled to $64,000. The check was deposited into Della Rose's bank account. Della Rose asked

1

104

an associate of his, Dennis Ilenfeld, to obtain a false identification bearing Ilenfeld's picture and the name of James George from a third conspirator, Mary Romanski, in the Illinois Secretary of State's office. After Ilenfeld obtained the false identification, Della Rose gave Ilenfeld a check made out to James George for the amount of the settlement ($64,000). Ilenfeld cashed the check and delivered the proceeds to Della Rose.

## I. MOTION FOR JUDGMENT OF ACQUITTAL

Defendant renews his Motion for a Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence the government presented against the defendant at trial. The motion must be granted for "any offense for which the evidence [presented at trial] is insufficient to sustain a conviction." Fed. R. Crim. P. 33(a).

Essentially, the court's role on a Rule 29 motion is to police the jury function. The jury's verdict will be overturned if "the record is devoid of evidence from which the jury could reach a finding of guilt." United States v. Taylor, 226 F.3d 593, 596 (7th Cir. 2000). On these motions, the record is reviewed in the light most favorable to the government. Id. The Defendant's Rule 29 Motion presents a challenge to his conviction on both counts of the indictment.

### A. COUNT ONE OF THE INDICTMENT

The challenge to the first count of the indictment focuses on disputes about the credibility of two government witnesses: James George and Dennis Ilenfeld. "'It is the jury's exclusive function to evaluate the credibility of witnesses, resolve conflicts in evidence, and draw reasonable inferences from the evidence presented.'" United States v. Cunningham, 108 F.3d 120, 121 (7th Cir. 1997) (quoting United States v. Klein, 910 F.2d 1533, 1538 (7th Cir. 1990)).

2

Based on the evidence presented at trial, a reasonable jury could certainly have resolved doubts about the credibility of witnesses in favor of the government. The evidence presented on Count One was sufficient for a reasonable jury to reach a finding of guilt.

### B. COUNT TWO OF THE INDICTMENT

The Defendant's Motion for a Judgment of Acquittal presents a different challenge to Count Two of the indictment. Count Two of the indictment charges Della Rose with conspiracy to produce a false identification document in violation of 18 U.S.C. § 1028. Although Della Rose is only charged with conspiracy in violation of the conspiracy statute, 18 U.S.C. § 371, the underlying charge would require the government to prove that the production of the false identification affected interstate commerce. The Defendant asserts that the government failed to produce any evidence that the production of the false identification affected interstate commerce, as required by the statute. The government pointed out in its response that the false identification document in this case was created specifically to obtain funds from a bank that conducts business in interstate commerce.

When Congress passed the False Identification Crime Control Act in 1982, it "intended to 'provide broad Federal jurisdiction over violations of this section' and . . . only a 'minimal nexus with interstate commerce' need be shown." United States v. Johnson, No. 01 CR 473, 2001 U.S. Dist. LEXIS 17614, at *6 (N.D. Ill. Oct. 25, 2001) (quoting H.R. Rep. No. 97-802 (1982)). The criminal statute survives constitutional challenge based on the Commerce Clause precisely "because it requires the government to prove a minimal connection to interstate commerce in each case." Id. The government's assertion that the false identification was used to cash a check at a bank on its face begins to show that minimal connection to interstate commerce, but the

Court is uncertain whether the evidence at trial was sufficient to sustain the connection to interstate commerce. While it may be a truism among learned attorneys that banks operate in interstate commerce, unless the government provided some positive evidence of that at trial, it is doubtful that the conviction could be sustained.

The parties are directed to submit additional briefing on this issue. In their briefs, both parties should highlight any portion of the trial transcript that they believe does or does not prove a connection to interstate commerce. If the government's position is that evidence that the Defendant used the false identification at a bank without any further evidence that the bank operates in interstate commerce is sufficient to sustain this conviction, it should present clear authority for that position.

## II. MOTION FOR A NEW TRIAL

The Defendant presents several alleged errors in his motion for a new trial. Motions for a New Trial should be granted "if the interest of justice so requires." Fed. R. Crim. Pro. 33; see also United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir. 1989). These motions are disfavored, though, as to grant them regularly would occupy significant judicial resources. A defendant must demonstrate that the trial significantly jeopardized his or her constitutional rights. United States v. Reed, 986 F.2d 191, 192 (7th Cir. 1993).

### A. EXCLUSION OF TESTIMONY ABOUT ILENFELD THREATS

Prior to trial, the Court granted the government's motion in limine to exclude inquiry about a threat allegedly made by Dennis Ilenfeld. Now, the Defendant claims this ruling prejudiced his ability to obtain a fair trial. The only case cited by the Defendant, United States v. Manske, 186 F.3d 775 (7th Cir. 1999), holds that it is permissible to inquire about threats made

4

to other witnesses with respect to their testimony. The situation in <u>Manske</u> could not be more different than the situation with Ilenfeld. In <u>Manske</u>, the witness issued threats to manipulate the testimony of witnesses. This type of behavior goes directly to the truthfulness of the witness. With regard to Mr. Ilenfeld, he has a very fractious relationship with his ex-wife, ample evidence of which was presented to the jury. According to the defendant, Ilenfeld threatened his ex-wife. According to the government, the alleged threats were directed towards his wife's paramour, who had already threatened Ilenfeld. (Gov. Mem. Resp. Def. Post-Trial Mot., at 1) The Court does not know and frankly does not care to know what the precise circumstances of this alleged threat were. To permit inquiry into the subject would create a needless distraction from the issues in the trial. It does little or nothing to alter the calculus of Ilenfeld's credibility.

Additionally, the jury was instructed to consider Ilenfeld's testimony with caution and great care, as he had admitted to lying under oath and received benefits from the government for his testimony. Under these circumstances, the Court can perceive no error in excluding inquiry into an alleged and isolated threat issued in the context of an emotional and challenging family law matter.

### B. TESTIMONY OF JAMES GEORGE

The Defendant urges that two areas of James George's testimony were irrelevant and unduly prejudicial to Defendant's rights: testimony about a beating George received from his father as a child and testimony about George's care taking of two boys. As to the former, the Court promptly sustained the Defendant's relevance objection. The jury heard little or no evidence about any childhood beatings that George may have received. As to the latter, the Defendant did not present an objection to the testimony as it happened. Instead, it became the

subject of a line of cross-examination. Under these circumstances, the Defendant has waived any objection to this testimony.

Moreover, the evidence about the two boys hardly cast George "in a heroic light." (Def. Mot. New Trial, at 3) Precisely what the government sought to accomplish with this evidence is unclear. It could have been introduced, as Defendant believes, to foster sympathy for George, but it could just as readily been introduced to demonstrate his level of functioning during periods of drug and alcohol dependency. Had Defendant proffered a relevance objection at the time of the testimony, both parties and the Court would be in a better position to determine whether the testimony was proper. As it stands, though, the evidence admitted on this subject was conceivably relevant to George's credibility and it presents no threat to any of the substantial rights of the Defendant.

### C. CROSS EXAMINATION

The Defendant challenges limitations to the cross-examination of two witnesses: James George and Dennis Ilenfeld. The Court may impose reasonable limits on the Defendant's ability to cross-examine witnesses. See United States v. Arocho, 305 F.3d 627, 636 (7th Cir. 2002). As long as the cross-examination is sufficient for the jury to assess the witnesses' credibility, motives, and biases, limitations on cross-examination are within the Court's discretion. See United States v. Cueto, 151 F.3d 620, 638 (7th Cir. 1998). With these principles in mind, the Court turns to the specific challenges.

1. James George

The Defendant claims that the Court erroneously refused to permit cross-examination of James George on whether he had previously told a doctor that he was spending $10,000 a month

on cocaine. The subject of George's drug use was discussed at length during his testimony, both on direct examination and on cross-examination. When George was asked whether his cocaine habit was ever at a level where he was spending $10,000 a month on the drug, George denied it. He had previously denied spending $10,000 a month on cocaine during a civil deposition. Defendant's specific question as to whether he informed a doctor at one point that he was spending $10,000 a month on cocaine was of little additional value to the impeachment of the witness. This restriction did not infringe on the Defendant's Sixth Amendment right to confront the witnesses against him, nor did it affect his ability to obtain a fair trial.

    2.    Dennis Ilenfeld

The Defendant urges that the Court erroneously limited his cross-examination of Dennis Ilenfeld about three topics: (a) an allegedly fake tape recording he made of his wife during custody proceedings; (b) Ilenfeld's prior ARDC complaints or lawsuits against attorneys; and (c) Ilenfeld's false social security numbers.

    a. The Tape Recording

The Defendant sought to examine Ilenfeld about a tape recording that he allegedly introduced as evidence in a custody hearing against his wife. According to the Defendant, this tape recording had been spliced together from various conversations Ilenfeld had with his wife in order to make his wife appear to be an unfit mother. The Court limited the Defendant's cross-examination on the subject to whether Ilenfeld had made such a tape. When asked, Ilenfeld denied the allegation. No further inquiry was permitted.

In the Motion for a New Trial, the Defendant urges two theories of admissibility of further evidence on this issue: Rule 608(b) and Rule 404(b). Rule 608(b) governs impeachment

7

of a witness based upon specific instances of conduct, which the making of a tape would be. Under Rule 608(b), inquiry on this subject is properly limited to asking the witness about it on cross-examination. "Specific instances of the conduct of a witness . . . may not be proved by extrinsic evidence." Fed. R. Evi. 608(b). When the witness denied the allegation about the tape, the inquiry was properly over.

Rule 404(b) allows the introduction of evidence of other crimes, wrongs or acts to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Fed. R. Evi. 404(b). The Defendant's theory to introduce this evidence under Rule 404(b) is that it showed "Ilenfeld had the wherewithal to create phony evidence." In order for the Defendant to succeed in this showing, he would have had to prove that Ilenfeld in fact spliced the tape together from thirteen different conversations with his wife, a showing that the Court is not confident the Defendant could make (and there was no offer of proof). At the very least, it would have required expert testimony on the issue. Moreover, even if the Defendant had succeeded, it would accomplish little as Ilenfeld's willingness and capacity to make a phony ID in this case was never in question. Ilenfeld had testified that he participated in the scheme to create the false ID and that he had plead guilty to the charges against him in the indictment. Admitting this evidence would have created a large distraction from the issues in the case and it offered little gain to the Defendant. Under Rule 404(b), this evidence was properly excluded.

b. Prior Complaints Against Attorneys

The Defendant argues that his inquiry about Ilenfeld's relationship with attorneys was unfairly limited. This is not the case. The Defendant was able to establish that he initiated suit

against his family law attorney wherein he sought a million dollars in damages. (Tr. 370) The Defendant additionally established that Ilenfeld instigated the filing of an A.R.D.C. complaint against his wife's attorney in their child custody dispute. The Court did not permit inquiry into the specifics of the complaint against Ilenfeld's wife's attorney. The specifics of the complaint are irrelevant, even under Defendant's theory. This inquiry was properly limited.

### c. Ilenfeld's false social security numbers

The Defendant asserts that the Court unfairly limited his inquiry of Dennis Ilenfeld with respect to false social security numbers. The Defendant argues that he should have been able to present evidence of Ilenfeld's use of false social security numbers under Rule 404(b). At trial, the Defendant cross-examined Ilenfeld extensively on the subject of his social security number. The Defendant elicited testimony from Ilenfled that his actual social security number is different from the social security number listed on his driver's license. Ilenfeld additionally testified that the social security number he provided on one or more applications was different from his actual social security number. The Defendant made an offer of proof that witnesses would have testified that Ilenfeld provided different social security numbers in at least five separate instances. The Court did not permit other witnesses to testify on the subject.

Contrary to the Defendant's assertions, this case was not about false social security numbers. In order to accomplish the scheme, it is true that the Defendant had to produce a false identification, but the scheme did not require use of any false social security numbers: it only required a false name. Additionally, it did not appear that Ilenfeld's use of false social security numbers was calculated towards obtaining any material advantage from having more than one social security number. To permit further testimony into this matter would have been an undue

9

waste of time and it would have confused the issues in the case. Consequently, inquiry on the subject was properly limited to cross-examination. See United States v. Wilson, 307 F.3d 596, 601 (7th Cir. 2002).

### D. DEPOSITION EXCERPTS

The Defendant asserts that the Deposition excerpts the Government introduced were inadmissible hearsay. All of the portions of the deposition transcript that the government introduced were comprised of the Defendant's own statements. As such, they were properly admissible under Rule 801(d)(2), which allows that "a statement is not hearsay if . . . [it] is offered against a party and is [] the party's own statement. . ."

### E. BRITZ/DEFRANCESCO TESTIMONY

The Defendant asserts the Court erred when it permitted the testimony of Richard Britz and precluded the testimony of Frank DeFrancesco to contradict Britz. Richard Britz testified that in 1995, the Defendant told him to go see Mary Romanski to obtain a fraudulent identification card under a fictitious name. Under Rule 404(b), evidence of prior crimes is admissible to show a common scheme or plan. Britz' testimony demonstrated precisely that and was properly admissible under Rule 404(b).

The Defendant then sought to produce testimony from Frank DeFrancesco to contradict Britz. According to Defendant's Motion, "DeFrancesco was prepared to tell the jury that Britz had told him that he had obtained the false identifications *not* through Defendant, but through Dennis Ilenfeld." (Def. Mot. New Trial, at 8) As the Government points out in its response, DeFrancesco's testimony about Britz' statements would be precluded by the hearsay rule. DeFrancesco's testimony would regard an out-of-court statement and it would be offered to

10

prove the truth of the matter asserted. Unless an exception applies (and none has been highlighted here), the hearsay rule prohibits this testimony from this witness. While the Defendant was at liberty to offer evidence contradicting Britz' testimony, he had to do so with competent evidence. Because DeFrancesco's testimony was hearsay, it was properly excluded.

F. CROSS-EXAMINATION OF LAWRENCE STARKOPF

The Defendant asserts that the Government introduced unfair, prejudicial evidence during its cross-examination of Lawrence Starkopf. Starkopf was a defense witness called to testify about Ilenfeld's character. During its cross-examination, the Government sought to elicit a statement from Starkopf that Starkopf did not believe the Defendant was honest. The Defendant's objection was promptly sustained to testimony about the Defendant's character, as it was not directly at issue in this case.

The Defendant's position is that when the objection was sustained "the cat was already out of the bag at that point and the Government had made it perfectly clear to the jury what it expected Starkopf to say." (Def. Mot. New Trial, at 10). Expectations are not evidence, nor are lawyer's questions. Indeed, the jury received an instruction that the lawyers' questions and the lawyers' statements are not evidence. As there was no prejudicial evidence admitted against Defendant during the cross-examination of Starkopf, Defendant's objection at this point is misplaced. The contemporaneous objection which the Court sustained cured any problem that may have arisen from the Government's cross-examination.

G. CLOSING ARGUMENT

The Defendant interposes objections to several portions of the Government's closing argument. "'Improper comments during closing arguments rarely rise to the level of reversible

11

error, and considerable discretion is entrusted to the district court to supervise the arguments of counsel.'" United States v. Amerson, 185 F.3d 676, 685–86 (7th Cir. 1999) (quoting United States v. Wilson, 985 F.2d 348, 353 (7th Cir.1993) (internal quotation omitted)). "A new trial is required only if the improper comments prejudiced the defendant's right to a fair trial." Id. at 686.

1. Distortion of the Burden of Proof

The Defendant claims the Government distorted the burden of proof when the prosecutor remarked that the jury was faced with a simple question. The statement was as follows:

> So now we find ourselves in the courtroom with the very same question that Steven Della Rose set up as his defense. And the question before this jury is a simple one. Do you believe James George and all the corroborative evidence that supports his testimony, or do you believe Steven Della Rose and all the lies that he told Ben Geach and the ARDC and at a civil deposition under oath to cover his tracks.

Tr. 610. This characterization of the "question before the jury" is not precisely accurate. In this, as in all criminal trials, the question before the jury was whether the government provided proof beyond a reasonable doubt that Steven Della Rose was guilty of the crimes charged in the indictment. However, this remark by the prosecutor was not inviting the jury to convict the defendant on a finding of less than reasonable doubt. The prosecutor's comment was setting up the evidence for the jury. The jury could not believe both the testimony of George and the evidence presented from Della Rose's deposition testimony. Cf. United States v. Amerson, 185 F.3d at 687 (holding that a dichotomy of credibility is permissible during closing arguments).

While this Court finds there to be no prejudicial error in this remark, in the future the Government would be well-advised to avoid the needlessly dramatic characterization of evidence that this remark demonstrates. Characterizing deposition testimony of a non-testifying Defendant

12

as "lies . . . to cover his tracks" treads perilously close to the line. Considering the record as a whole in this case, the Court perceives no error in the remark. In another case with another record, however, the result could be different.

        2.      Comment on the Defendant's Silence

The Defendant urges the Government impermissibly commented on his right to remain silent during its closing argument. In addition to the obtuse reference in the remark discussed above, the Defendant points to the prosecutor's argument that "other than Defendant's 'self-serving statement in Mr. Della Rose's testimony and Mr. Della Rose's letter, there is absolutely no evidence whatsoever in this case that Mr. George was in Della Rose's office in April or May or any Saturday." (Def. Mot. New Trial, at 11). While the Defendant only urges the latter remark as a comment on silence, the Court examines both remarks together to determine whether they posed any prejudice to Defendant's Fifth Amendment right not to testify.

As an initial matter, the Court notes that neither remark constitutes a direct reference to the Defendant's decision not to testify in this case. Indirect references to a defendant's decision not to testify are less offensive than direct references. The remark discussed in reference to the burden of proof scarcely implicates Defendant's silence. The remark that Defendant highlights here does not go much further towards commenting on the Defendant's silence either. In addition to the Defendant, Della Rose's secretary or George himself are alternative sources for evidence that George was in Della Rose's office in the disputed time period. The prosecutor's arguments did not impermissibly implicate the Defendant's silence.

        3.      Characterization of evidence as ridiculous

The Defendant objects to the prosecutor's characterization of Defendant's letter to the

A.R.D.C. as "the most ridiculous statement I've ever heard." The Defendant avers that this is an improper interjection of the prosecutor's personal opinions rather than a fair comment on the evidence. While the prosecutor's hyperbole is needless and clear, "ridiculous" is a fair characterization of Defendant's letter to the A.R.D.C. In the letter, the Defendant asserts that George had training in explosives that he was willing to employ when his disability benefits were terminated. In fact, George testified he had no training in explosives and his employer testified that his disability benefits were never terminated. The prosecutor's exaggeration is unnecessary, but it did not prejudice the Defendant's rights in any way.

    4.    Comments about prior dealings with the Defense attorney

The Defendant asserts that the prosecutor's comments about his past dealings with the Defendant's attorney resulted in an improper characterization of the burden of proof. This type of playful jousting between attorneys is neither necessary nor objectionable. The government's comments reside well within the boundaries of fair comment during closing argument.

    5.    Comment about the Defendant being a former prosecutor

The Defendant objects to the prosecutor's argument that the Defendant would have known that copies of files were more difficult to analyze because he was a former prosecutor. The Defendant asserts that this constitutes an improper comment on facts not in evidence. The fact that the Defendant worked as a prosecutor in the State's Attorney's office consumer fraud section was in evidence. The prosecutor's argument, then, is based on a permissible inference from the evidence that all prosecutors would be aware of the different value of original and copied documents. See United States v. Sanchez-Galvez, 33 F.3d 829, 835 (7th Cir. 1994). The inference is a bit strained, but it is within the sphere of permissible argument.

14

H.  JURY INSTRUCTIONS

The Defendant presents two objections to the jury instructions in this case. First, he asserts that a unanimity instruction ought have been given on the mail fraud charge, as the Government charged the Defendant with schemes to defraud both the employer and James George. Second, he asserts that the failure to give an elements instruction on the false identification aspect of the conspiracy count constitutes reversible error.

"Jury instructions must be examined as a whole." United States v. Clarke, 227 F.3d 874, 881 (7th Cir. 2000). Error in the jury instructions is grounds for reversal only "'if the jury instructions, viewed as a whole, misguide the jury to the litigant's prejudice.'" United States v. Smith, 223 F.3d 554, 566 (7th Cir. 2000) (quoting United States v. Rodriguez-Andrade, 62 F.3d 948, 953 (7th Cir. 1994)).

    1.    Unanimity Instruction on the Mail Fraud Charge

The Defendant asserts that the indictment charged him with three separate schemes to defraud which would each pose a separate basis for conviction. Therefore, he argues, the jury needed to unanimously agree on one of the schemes in order to convict. This is not correct. In this case, the Defendant was charged with a single scheme to fraudulently obtain $80,000 using the U.S. Mail. As the government highlights, the three separate schemes listed in the indictment posit multiple possible victims of the fraudulent scheme (the employer and James George), but each victim loses because of the same scheme. Proof of the identity of the victim of the scheme is not an essential element of the crime of mail fraud.

Moreover, even if proof of the identity were required, "the general rule is that 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the

15

verdict stands if the evidence is sufficient with respect to any one of the acts charged.' Turner v. United States, 396 U.S. 398, 420 (1970)." United States v. Bond, 231 F.3d 1075, 1078 (7th Cir. 2000). As there was sufficient evidence with regard to either George or the employer (or both), there is no error, reversible or otherwise in the jury instructions on this count.

    2.  Absence of an Elements Instruction on False Identification

Count Two of the indictment charged the Defendant with Conspiracy to produce a false identification in violation of 18 U.S.C. § 1028(a)(1). An essential element of the false identification statute is that the false identification in question affected interstate commerce. Della Rose was not charged with a violation of 18 U.S.C. § 1028(a)(1), however. He was only charged with conspiracy to violate 18 U.S.C. § 1028, in violation of the conspiracy statute, 18 U.S.C. § 371. The essential elements of conspiracy are an agreement and some overt act in furtherance of that agreement. While an elements charge was given on conspiracy, no elements charge was given on the underlying false identification charge.

The government did not respond to the Defendant's argument on this issue as it noted that "the parties are discussing possible resolution of this issue short of presenting it to the Court for consideration." (Gov't Mem. Resp. Def. Post-Trial Mot., at 16 n.5) If the issue has not been resolved by the parties (which, absent information to the contrary, the Court assumes to be the case), the parties are directed to include in their supplemental briefing on this issue from the motion for a judgment of acquittal their positions as to whether it is necessary to charge the jury separately on the elements of the underlying offense to a conspiracy indictment.

## CONCLUSION

For the reasons set forth in this opinion, Defendant's Motion for a Judgment of Acquittal is denied in part. Defendant's Motion for a New Trial is also denied in part. The parties are directed to submit additional briefing on the issues highlighted in this opinion.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated: July 22, 2003**