# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 466 | **DATE** | 8/26/2003 |
| **CASE TITLE** | U.S.A. vs. Della Rose | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Judgment of Acquittal and Motion for New Trial

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons given in the attached memorandum opinion, Defendant's Motion for a Judgment of Acquittal [No. 84] is granted as to Count Two. In the alternative, Defendant's Motion for a New Trial [No. 85] is granted as to Count Two.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 27 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | 113 |
| | Copy to judge/magistrate judge. | | | |
| jar/lc | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 02 CR 466-1 |
| Plaintiff, ) | |
| ) | HONORABLE DAVID H. COAR |
| v. ) | |
| ) | DOCKETED |
| STEVEN J. DELLA ROSE ) | |
| ) | AUG 2 7 2003 |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Following a jury trial, Defendant Steven J. Della Rose ("Defendant" or "Della Rose") was convicted of mail fraud in violation of 18 U.S.C. § 1341 and conspiracy to produce false identification in violation of the False Identification Crime Control Act, 18 U.S.C. § 1028, and in violation of the conspiracy statute, 18 U.S.C. § 371. On July 22, 2003, this Court denied in part Defendant's Motion for a Judgment of Acquittal and Defendant's Motion for a New Trial. At that time, the Court reserved judgment on two issues related to the interstate commerce element of the allegations underlying the Conspiracy charge.

There are two questions remaining to be answered relating to the Defendant's outstanding Motions: (1) whether the Government presented sufficient evidence of interstate commerce to sustain its conviction on the Conspiracy charge; and (2) whether the failure to instruct the jury on the elements of the underlying offense to the conspiracy was plain error sufficient to mandate reversal of the conviction. If there was insufficient evidence to sustain the conviction, the absence of an instruction on the elements of the offense would become immaterial, as no

1

113

instruction would cure the insufficiency of the evidence. Consequently, the Court will begin its analysis with that issue.

**A. Sufficiency of the Evidence on Count Two**

As with all post-conviction challenges to sufficiency of the evidence, the government benefits from a very favorable standard of review. Jury verdicts are entitled to significant deference, and they will be overturned only if "the record is devoid of evidence from which the jury could reach a finding of guilt." United States v. Taylor, 226 F.3d 593, 596 (7th Cir. 2000). The evidence is reviewed in the light most favorable to the government. Id. After conducting that review, the Federal Rules of Criminal Procedure counsel that the motion must be granted for "any offense for which the evidence [presented at trial] is insufficient to sustain a conviction." Fed. R. Crim. P. 33(a).

Count Two of the Indictment against Della Rose charged him with conspiracy "to knowingly and without authority produce a false identification document, to wit: an Illinois state ID card issued in a false name, in violation of Title 18, United States Code, Section 1028(a)(1)." The statute that underlies the conspiracy charge makes it a crime for anyone "in a circumstance described in subsection (c) of this section [to] knowingly and without lawful authority produces an identification document or a false identification document." 18 U.S.C. §§ 1028(a)(1). The relevant "circumstance described in subsection (c)" is that "the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce." 18 U.S.C. § 1028(c)(3)(A). The elements of the crime underlying the conspiracy charge in Count Two would therefore be: (1) production of a false identification document; and (2) the production of the false identification document is in or affects interstate commerce.

When seeking a conviction for conspiracy, the government must prove the Defendant agreed with some other person to commit a crime and one of the conspirators took some overt act

2

in furtherance of the agreement. The government must also prove that the Defendant had the intent to commit the underlying crime charged in the indictment. There is no dispute about the conspiracy elements of the conviction, nor is there any dispute about the first element of the underlying crime. The conspiracy had as one of its central objectives the production of a fraudulent identification document and the evidence clearly demonstrates that the identification document was in fact produced.[1] The only remaining question regards the second element of the underlying offense. Did the government provide sufficient evidence that the production of the

---

[1] Although the parties have not raised the issue, the Court harbors some uncertainty as to whether the document actually produced was a "false identification document" as that term is defined in the statute. The U.S. Code defines "false identification document" as a document that "is not issued by or under the authority of a governmental entity [] and appears to be issued by [a governmental entity." 18 U.S.C. § 1028(d)(3). The statute also criminalizes the production of "an identification document" without lawful authority. An identification document is defined in the statute as "a document made or issued by or under the authority of [a governmental entity] which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals[.]"

Under the facts of this case, the document was certainly a "fake ID" in common parlance; it bore a photograph of Dennis Ilenfeld and the name of James George. Indictments and statutes, however, are not written in common parlance. The identification card in this case was issued by a state government agency, the Illinois Secretary of State. Thus, it would seem to be an "identification document" rather than a "false identification document" as defined by the statute. The Court assumes the Government's theory to be that Mary Romanski did not have the authority to issue identification cards to individuals in a name other than their own. Therefore, the identification document arguably is "not issued under the authority of a governmental entity."

In United States v. Johnson, No. 01 CR 473, 2001 WL 1313789, at *1 (N.D. Ill., Oct. 25, 2001), a defendant challenged the application of this statute to him because the identifications issued contained his true name and his true photograph. Under the facts of that case, the defendant had gone to the Illinois Secretary of State's office to receive a replacement driver's license even though his own driver's license had been suspended for driving under the influence of intoxicants. Judge Lefkow distinguished between false identification documents and identification documents that are issued without lawful authority under this statute, and concluded that the documents issued by the Illinois Secretary of State's office fell into the latter category. Id. Cf. United States v. Gros, 824 F.2d 1487, 1491 (6th Cir. 1987) (discussing the significant distinction between "identification documents" and "false identification documents" in the statute on an indictment for violating a different subsection, 18 U.S.C. §§ 1028(a)(6)). In As the Defendant has not pressed the point here, any associated error would be waived. The government would be well-advised, though, to be more careful with the language of its indictments in the future.

3

false identification document was in or affects interstate commerce?

The evidence the Government presented relating to the false identification and interstate commerce can be recounted quickly. The false identification was produced at the offices of the Illinois Secretary of State in Ford City, Illinois. It was given to Dennis Ilenfeld and it bore his picture and the name of James George. Ilenfeld took the identification document to Bank One in downtown Chicago and used it to cash a $64,000 check that was drawn on Defendant Della Rose's client trust account at Bank One, a.k.a. First Chicago Bank, and made out to James George. The check was cashed at a downtown Chicago branch of the bank. After cashing the check, Ilenfeld returned the majority of the proceeds to Defendant Della Rose at his office in Chicago. Afforded the opportunity to point to any additional evidence in the record, the Government flatly responded: "There is no additional evidence." (Gov't Supp. Mem. Re: Interstate Commerce, at 1.)

The record in this case does not disclose any relationship to interstate commerce beyond the plain fact that the false identification was used to cash an intra-state check at a bank. Although the Government presented testimony from a bank employee, it did not solicit any testimony about the nature and extent of the bank's business. The Government's position is that all they need to show to sustain a conviction under this statute is two things: a false identification document and a cashed check.

Both parties and the Court have been at a loss to uncover positive law on what is required to establish the affect on interstate commerce for a violation of 18 U.S.C. §§1028(a)(1). The statutory history reveals that when Congress passed the False Identification Crime Control Act in 1982, it "intended to 'provide broad Federal jurisdiction over violations of this section' and . . . only a 'minimal nexus with interstate commerce' need be shown." United States v. Johnson, No. 01 CR 473, 2001 WL 1313789, at *1 (N.D. Ill. Oct. 25, 2001) (quoting H.R. Rep. No. 97-802 (1982)). The criminal statute survives constitutional challenge based on the Commerce Clause

precisely "because it requires the government to prove a minimal connection to interstate commerce in each case." Id.

The limited number of published cases addressing this statute tend to focus on violations of one of the other subsections. In United States v. Pearce, 65 F.3d 22 (4th Cir. 1995), a defendant presented a sufficiency of the evidence challenge to his conviction under 18 U.S.C. §§ 1028(a)(5) specifically on the issue of the connection to interstate commerce. There, the Fourth Circuit held that the government had met its burden by presenting substantial evidence that the defendants document-making implements had been in interstate commerce. Pearce, 65 F.3d at 25 (discussing the evidence the government presented that the defendant had identification documents from Tennessee, New Jersey, and Connecticut). In Pearce, the evidence of the relationship to interstate commerce was much stronger than the Government presented in this case. The defendant there was producing identification documents from more than one state, which would be sufficient to establish the minimal nexus to interstate commerce.

In United States v. Villareal, 253 F.3d 831, 834 (5th Cir. 2001), the defendant was convicted of violating 18 U.S.C. §§ 1028(a)(2), which criminalizes the transfer of a false identification document. In that case, the defendant agreed to transfer false identification documents to a third party to enable the third party to travel freely between the United States and Mexico. To the defendant's dismay, the third party was a federal agent working undercover, so the transferred documents never actually traveled in foreign commerce as originally planned. Under those circumstances, the Fifth Circuit held that it should focus on "whether the transfer would have affected interstate or foreign commerce if [the defendant] had successfully accomplished his intended goals." Villareal, 253 F.3d at 835. In that case, if the defendant had accomplished the intended goals, the documents would have been used to travel in foreign commerce between the United States and Mexico. In the case before the Court, we need not engage in supposition: the Defendant did accomplish his intended goals. Yet there is no

precisely "because it requires the government to prove a minimal connection to interstate commerce in each case." Id.

The limited number of published cases addressing this statute tend to focus on violations of one of the other subsections. In United States v. Pearce, 65 F.3d 22 (4th Cir. 1995), a defendant presented a sufficiency of the evidence challenge to his conviction under 18 U.S.C. §§ 1028(a)(5) specifically on the issue of the connection to interstate commerce. There, the Fourth Circuit held that the government had met its burden by presenting substantial evidence that the defendants document-making implements had been in interstate commerce. Pearce, 65 F.3d at 25 (discussing the evidence the government presented that the defendant had identification documents from Tennessee, New Jersey, and Connecticut). In Pearce, the evidence of the relationship to interstate commerce was much stronger than the Government presented in this case. The defendant there was producing identification documents from more than one state, which would be sufficient to establish the minimal nexus to interstate commerce.

In United States v. Villareal, 253 F.3d 831, 834 (5th Cir. 2001), the defendant was convicted of violating 18 U.S.C. §§ 1028(a)(2), which criminalizes the transfer of a false identification document. In that case, the defendant agreed to transfer false identification documents to a third party to enable the third party to travel freely between the United States and Mexico. To the defendant's dismay, the third party was a federal agent working undercover, so the transferred documents never actually traveled in foreign commerce as originally planned. Under those circumstances, the Fifth Circuit held that it should focus on "whether the transfer would have affected interstate or foreign commerce if [the defendant] had successfully accomplished his intended goals." Villareal, 253 F.3d at 835. In that case, if the defendant had accomplished the intended goals, the documents would have been used to travel in foreign commerce between the United States and Mexico. In the case before the Court, we need not engage in supposition: the Defendant did accomplish his intended goals. Yet there is no

evidence that the accomplishment was in or affected interstate commerce beyond the cashing of a check at a bank. Villareal, too, is readily distinguished.

In United States v. Jackson, 155 F.3d 492 (8th Cir. 1998), a defendant presented a sufficiency of the evidence challenge to his conviction under 18 U.S.C. §§1028(a)(3) on the same interstate commerce issue. The defendant there was convicted of orchestrating a massive phony check-cashing operation. In that case, the government had proved the Defendant had at least five fraudulent identification documents (as required by subsection (a)(3)), four of which were issued by the State of Minnesota and one of which was issued by some other government entity that is not named in the opinion. The defendant's position was that unless all five of the documents traveled in interstate commerce, the conviction could not stand. The Eighth Circuit held that the statute did not require the documents to travel in interstate commerce. Jackson, 155 F.3d at 947. Instead, the government could sustain a conviction with proof "that Jackson's possession affected interstate commerce by proving that possession of the stolen driver's licenses was integral to his scheme to defraud businesses and banks operating in interstate commerce." Id.

While a closer parallel can be drawn between this case and Jackson, as both involved checks and banks, the facts of the two cases are readily distinguishable. In Jackson, the defendant was drafting forged checks from Minnesota bank accounts and cashing them at national chain stores, such as Target. On those facts, both the banks and the chain stores are defrauded. It is unclear from the Eighth Circuit opinion whether there was evidence adduced at trial that either the banks or the chain stores operated in interstate commerce. Even if there was no such evidence (which there may have been), at a bare minimum, one of the five identification documents apparently came from outside of the state of operation, which would arguably establish the "minimal nexus" to interstate commerce the statute requires.

In this case, there is no evidence of any out-of-state involvement. Here, the Defendant drafted an authorized check out of the client trust account that he controlled. Unlike in Jackson,

6

the drafting of the check was not fraudulent. Next, the Defendant gave the check to a third party who possessed phony identification documents that entitled him to cash the check at the bank. While this was unquestionably fraudulent behavior, unlike in Jackson, the object of the fraud was one of Defendant's clients, not the bank.

In this case, as in so many others the Government has tried before this Court, the Government argued to the jury in its closing argument that it has a very high burden to meet in order to obtain a conviction. It is a bedrock principle of our criminal justice system that proof beyond a reasonable doubt is required. After that conviction is obtained, this Court looks back on the evidence and gives it every reasonable inference to see whether it could reasonably support the verdict the jury rendered. In this case, the Court regrettably holds that it cannot. The Government failed to offer any positive proof of even a minimal nexus between the false identification document in this case and interstate commerce. While the jury is entitled to rely on common sense and their own experience in interpreting the evidence, there must be some evidence on which they could base a conclusion that the production of the fraudulent identification in this case was in or affected interstate commerce. Neither the Court nor the jury is entitled to assume facts not in evidence when gauging the sufficiency of evidence supporting a conviction. Here there is simply no evidence that the bank operated in interstate commerce. Without any such evidence, a conviction that would require among its elements proof of a nexus to interstate commerce cannot be sustained.

Moreover, the Court has assumed for the purposes of this opinion a broad interpretation of the statute that would permit the subsequent use of the false identification documents to establish the nexus to interstate commerce in convictions under 18 U.S.C. § 1028(a)(1). The Defendant presses a compelling statutory interpretation argument that would require the production of the false identification document (as opposed to the later use of the document) to

be in or affect interstate commerce under this subsection of the statute.[2] Even under the more generous interpretation of the statute, the evidence cannot sustain the conviction.

**B. Absence of a Jury Instruction on the Underlying Offense in Count Two**

The other issue remaining to be addressed is the absence of a jury instruction on the elements of the false identification charge which supported the conspiracy conviction. This issue is presented in Defendant's motion for a new trial, which the Federal Rules of Criminal Procedure counsel should be granted "if the interests of justice so require." As the evidence was insufficient to sustain a conviction on the interstate commerce charge, it would not have made a difference to the outcome if the jury had received an instruction on the elements of the underlying false identification charge. In the interests of completeness, however, the Court will address the alleged error.

"Jury instructions must be examined as a whole." United States v. Clarke, 227 F.3d 874,

---

[2]Defendant's argument for his position finds support in the language of the statute and in the case law addressing other subsections. In various places, the statute criminalizes production, transfer, possession, and use of false identification documents under specified circumstances. Defendant was only charged in the indictment with production of a false identification document under subsection (a)(1). See Indictment, Count 2, ¶2. The language of the jurisdictional requirement in subsection (c)(3)(A) sets up production, transfer, possession, and use of false identification documents in the disjunctive. See 18 U.S.C. §§ 1028(c)(3)(A). This is significant, as in this case, the only conduct Defendant was charged with that was "prohibited by this section" was production of false identification documents. Thus, under the plain language of the statute, it is the production that must be in or affect interstate commerce.

The Defendant's position finds further support in the case law. In United States v. Villareal, 253 F.3d 831, 834 (5th Cir. 2001), the defendant was convicted of violating 18 U.S.C. §§ 1028(a)(2), which criminalizes only the transfer of a false identification document. The Fifth Circuit clearly assumed that to satisfy the jurisdictional requirement "the transfer [must] 'be in or affect interstate or foreign commerce.'" Villareal, 253 F.3d at 834. Accord United States v. Villeda, 1990 WL 253069, at *2 (D. Conn., Nov. 20, 1990) (requiring in a 18 U.S.C. §§ 1028(a)(2) indictment that "the transfer would affect interstate or foreign commerce"). These cases establish that only those allegations of the disjunctive jurisdictional requirements that the Defendant is charged with violating (production, transfer, possession, or use) must establish the nexus to interstate commerce.

8

881 (7th Cir. 2000). Error in the jury instructions is grounds for reversal only "'if the jury instructions, viewed as a whole, misguide the jury to the litigant's prejudice.'" United States v. Smith, 223 F.3d 554, 566 (7th Cir. 2000) (quoting United States v. Rodriguez-Andrade, 62 F.3d 948, 953 (7th Cir. 1994)).

In this case, no instruction was given to the jury on the elements of the underlying false identification charge. The Government originally submitted an instruction on the elements of this offense, but it was subsequently withdrawn. (Tr. 577) The Government's position is that the instruction was withdrawn at the request of the Defendant at an informal jury instruction conference that was not transcribed. The Defendant is now represented by new counsel who are either contesting the Government's account or disavowing former defense counsel's request to withdraw the instruction. The Court does not recall whether previous defense counsel requested the instruction to be withdrawn. If previous defense counsel did agree to withdraw the instruction, then any error associated with the absence of the instruction would be waived.

Even if the error were waived at trial, the issue is reviewable under the plain error doctrine of Rule 52 of the Federal Rules of Criminal Procedure. As the Supreme Court explained in United States v. Olano, 507 U.S. 725 (1993), Rule 52(b) requires that there "be an error that is plain and that affect[s] substantial rights. Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the [reviewing court], and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 732 (internal quotations omitted).

"The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." United States v. Gaudin, 505 U.S. 515, 522–23 (1995). The failure to instruct on an element of the offense, however, does not require reversal when "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent

the error." Neder, 527 U.S. 1, 17 (1999).

In United States v. Wilson, 240 F.3d 39 (D.C. Cir. 1995), the D.C. Circuit addressed a case where a defendant was convicted of a violation of 18 U.S.C. § 1028(a)(3) without an instruction on the interstate commerce element. In that case, the D.C. Circuit held that the error was not plain, as the Defendant did not meet the burden of establishing prejudice. Wilson, 240 F.3d at 45. There was, however, "evidence of interstate impact for all 16 of the devices charged in the indictment," id. at 43, which would place a high burden on the defendant to demonstrate prejudice on those facts. In this case, as recounted above, the Government adduced no evidence upon which the jury could sustain a finding of a nexus to interstate commerce. Considering the dearth of evidence on this issue, the failure to instruct the jury on the elements of the underlying charge was plain. If the Court did not already grant the Defendant's Motion for a Judgment of Acquittal on this issue, a New Trial would be required given the failure to instruct the jury on the elements of the underlying offense.[3]

---

[3]Indeed, the government indicates that it "does not oppose, as a last res[ort], the Court granting the defendant a new trial on Count Two." (Gov't Supp. Mem. Re: Interstate Commerce, at 4.)

## CONCLUSION

For the reasons set forth in this opinion, Defendant's Motion for a Judgment of Acquittal is granted as to Count Two. In the alternative, Defendant's Motion for a New Trial is granted as to Count Two.

**Enter:**

                                                                  _David H. Coar_ (signature)

**David H. Coar**
**United States District Judge**

**Dated: August 26, 2003**